IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| YARITZA M. MIRANDA, JEZZIEL RIVERA MIRANDA<br><br>  Plaintiffs,<br><br>vs.<br><br>IPR PHARMACEUTICALS, INC.; ASTRA ZENECA PLC; MARCELINO MELENDEZ; ROSA CARABALLO; INSURANCE COMPANY ABC; JOHN DOE and COMPANY XYZ<br><br>  Defendants. | CIVIL NO.<br><br>SEX DISCRIMINATION; HOSTILE WORK ENVIRONMENT; DAMAGES<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

**TO THE HONORABLE COURT:**

**COMES NOW** Plaintiff, though the undersigned attorneys, and respectfully states and prays as follows:

**I. JURISDICTION**

1. This Honorable Court has original jurisdiction over this action pursuant to 28 U.S.C § 1331 (federal question) inasmuch as it arises under the laws of the United States and pursuant to 28 U.S.C. § 1343(4) (civil rights) in as much as it seeks to recover damages or to secure equitable or other relief under the American with Disabilities Act, from hereinafter referred to as "A.D.A.," which incorporates by reference sec. 706 (f) (1) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C., sec. 2000e-5 and 28 U.S.C., sec. 1331; The Civil Rights Act of 1964 and of 1991, as amended, from hereinafter "Title VII".

1

2. This Honorable Court has supplemental jurisdiction over the State law causes of action pursuant to 28 U.S.C. § 1367(a) inasmuch as they are so related to the claims in this action over which the Court has original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution and they do not raise novel or complex questions of State law and they do not predominate over the claims over which the court has original jurisdiction.

3. All conditions precedent to jurisdiction under A.D.A., A.D.E.A. and Title VII, have been complied with.

4. The plaintiffs are citizens of the Commonwealth of Puerto Rico.

5. This action involves a sum in excess of $75,000.00, exclusive of interest and cost.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), inasmuch as this action is brought in the judicial district in which all or a substantial part of the events or omissions giving rise to the claims occurred.

7. Trial by jury is hereby demanded.

## II. THE PARTIES

8. Plaintiff Yaritza Miranda ("Mrs. Miranda") is a resident of the Commonwealth of Puerto Rico and a citizen of the United States of America.

9. Co-Plaintiff Jezziel Rivera Miranda ("J.R.M.") is Mrs. Miranda's child who was diagnosed with autism. Thus, J.R.M. is an individual with a disability, as that term is defined under the American with Disabilities Act.

10. Defendant IPR PHARMACEUTICALS, INC. ("IPR") is a corporation organized pursuant to the laws of the Commonwealth of Puerto Rico, with local offices

located at Road 188 Lot 17, San Isidro Industrial Park, Canovanas Puerto Rico, and has continuously employed in excess of 50 persons at all relevant times. At all times, the defendant was an "employer", as defined by all the laws invoked in the Complaint.

11. Upon information and belief, Defendant Astra Zeneca, PLC ("Astra Zeneca") is a corporation operating and existing under the laws of the United Kingdom with its principal place of business at 15 Stanhope Gate, London W1K 1LN, England. Astra Zeneca PLC purposefully avails itself of the privileges of selling its drug products in Puerto Rico through its agent IPR Pharmaceuticals, Inc.  Upon information and belief, Astra Zeneca PLC regularly transacts business within this judicial district, including but not limited to directing the operations and management of IPR Pharmaceuticals, Inc. Further, upon information and belief, the acts of discrimination complained of herein were performed at the direction of, with the authorization of, with the cooperation, participation, assistance of, and, in part, for the benefit of AstraZeneca PLC.

12. Upon information and belief, Defendant Astra Zeneca PLC is the parent corporation of IPR Pharmaceuticals, Inc.

13. IPR engages in an industry affecting commerce and had more than 15 or more employees for each working day in each of twenty calendar weeks in the current or preceding year.

14. At all relevant times, Ms. Miranda has been an employee of IPR and/or its predecessors in interest.

15. Co-Defendant Marcelino Melendez is a resident of the Commonwealth of Puerto Rico and a citizen of the United States of America, and had been Mrs. Miranda's supervisor in IPR at all relevant times.

16. Co-Defendant Rosa Caraballo is a resident of the Commonwealth of Puerto Rico and a citizen of the United States of America, and has been the Human Resources employee assigned to Mrs. Miranda's case in IPR.

17. INSURANCE COMPANY ABC is an insurance company organized pursuant to the Insurance Code of the Commonwealth of Puerto Rico which issued an insurance policy to the defendant and is liable to the Plaintiff, to the extent of the terms of the policy, for all damages caused by the actions described below. This action is brought directly against INSURANCE COMPANY ABC pursuant to 26 L.P.R.A. §2003.

18. JOHN DOE and COMPANY XYZ are the natural persons and/or legal entities whose names and identities are unknown to the Plaintiff but who are liable for the damages claimed herein.

### III. CONDITIONS PRECEDENT:

**Administrative Proceedings**

19. On September 16, 2010, MS. Miranda filed a *Charge of Discrimination* ( the "CHARGE") against the Defendant before the EQUAL EMPLOYMENT OPPORTUNITY COMMISSION ("EEOC"), alleging that, during her employment with IPR, she has been subjected to discrimination and to a hostile work environment because of her gender.

20. On September 20, 2010, the EEOC issued a *Notice of Right to Sue*. Accordingly, the EEOC terminated its processing of the CHARGE.

21. This complaint is filed within ninety (90) days from receipt by Ms. Miranda of the *Notice of Right to Sue*.

**IV. RELEVANT FACTS**

22. On June, 2002, MS. Miranda was hired by IPR as an Industrial Mechanic I at its offices in Canovanas, Puerto Rico.

23. As the job title suggests, she was hired as an Industrial Mechanic and her responsibilities were, among others, to provide preventive and corrective maintenance of all plant, manufacturing and utilities equipment. The basic requirement to obtain such position is to have a technical degree or equivalent experience as a tabletting manufacturing mechanic or heavy industrial mechanic. Ms. Miranda was qualified for the position since she has a technical degree as an Industrial Mechanic.

24. Since Ms. Miranda commenced working at IPR she has been victim of a continuous and incremental pattern of interference in her work as well as discriminatory and unequal treatment. IPR has a policy of promotions based on merit whereas the company increases the salary and the job title. Accordingly, on every other evaluation, IPR appoints certain mechanics to be promoted to Industrial Mechanic II or Industrial Mechanic III.

25. Each semester IPR conducts performance evaluations which will be the basis to determine which employees will be promoted to Industrial Mechanic II or III. It is important to note that such promotion entails a salary increase. Since Ms. Miranda was hired by IPR her evaluations have usually been "Superior" which is the highest scale or "Fully Competent" which is the second highest scale.

26. When Ms. Miranda was hired by IPR approximately seven (7) other men were hired as Industrial Mechanic I. Today, after eight years, all of these men occupy

the positions of Industrial Mechanic II or III, nevertheless, Ms. Miranda continues to be Industrial Mechanic I.

27. Since her hiring at IPR and up to this date Ms. Miranda is the only woman occupying an Industrial Mechanic position.

28. It has come to Ms. Miranda's attention that other men who were hired at the same time as Ms. Miranda or after she was hired were promoted to Industrial Mechanic II or III.[1] Also the defendants paid their male employees, which were in similar positions as the plaintiff and performed identical functions and duties as Mrs. Miranda, higher salary, benefits, and bonuses than those paid to the plaintiff.

29. Due to defendant's discriminatory actions, Mrs. Miranda complained to her supervisor regarding the fact that she was being discriminated, due to her gender, and notwithstanding her complaints, the defendant did nothing, and thus, the discrimination against the plaintiff increased and continued up until this day.  Such discrimination not only affects Mrs. Miranda economically and emotionally, but also affects the medical, mental, emotional, well being of her son, co-defendant JRM.  In the year 2009 during her semester evaluation her supervisor told Ms. Miranda he realized that she should have been promoted to Industrial Mechanic II or III a long time ago but that the last 8 promotions given in January 2009 "came with a name" and were designated "from above."

30. One of the most patent discrimination that Mrs. Miranda has suffered at IPR has been that they have impeded her to develop her abilities and skills in the

---

[1] These men are: Javier Torres (Industrial Mechanic II); Pedro Rivera (Industrial Mechanic II); Rubén Fort (Industrial Mechanic II); Luis Millán (Industrial Mechanic II); Carlos Contreras (Industrial Mechanic II) Héctor Báez (Industrial Mechanic II); Eddie Ramos (Industrial Mechanic II); Gilberto Treviño (Industrial Mechanic III).

trainings with suppliers.  As part of the skill development in the job, IPR chooses almost every year different employees to take trainings with the product suppliers outside of Puerto Rico (i.e. United States, Europe, Latin America, etc.).  During her time at IPR Mrs. Miranda has never been chosen to attend any of these trainings, whereas, other men in her area with less time at the company are chosen.

31.     In May 2004 the discrimination and unequal treatment for Mrs. Miranda came to the highest point up until that moment.  At that time, Mrs. Miranda and her co-worker, Mr. José Medero, were called into their supervisor's office, Mr. Hiram Ocasio who informed them separately that there were rumors in the plant that Mr. Medero and Mrs. Miranda had a romantic relationship since they were always together.  Therefore, Mr. Ocasio informed them both that from that moment on they were forbidden to take any break together and they could not appear in any work order working together.  Mrs. Miranda told Mr. Medero that the other men at the plant worked together their work orders and that it was not fair that she had to work alone for the sole reason of unfounded rumors but her supervisor's answer was that those cases were different from hers and that the instructions came from above.

32.     Mrs. Miranda is the sole provider in her household with two minor children one of which has autism.  Her child's autism was diagnosed a year ago and his doctor recommended that he be transferred to a special school.  Therefore, her two children go to different schools which provoked that Mrs. Miranda started to come in late to work. In order to affect the least possible her work schedule, Mrs. Miranda requested co-defendant Marcelino Melendez, who is her supervisor, a Flexi time period or a change in hours starting at 7:30 a.m. instead of 7:00 a.m.  However, her requests were ignored

even though other male co-workers were permitted by Mr. Melendez to take the flexi time.  These actions caused damages to co-plaintiff JRM since he had to see his mother in a fragile mental state, worrying how she would cope with such pressures, especially with the pressure of having to leave her autistic child prior to the school opening since she had to be early at work or she would get fired.

33. On July 2009, Mrs. Miranda requested once again the Flexi time as permitted by IPR's Employees Manual since her two children had to go to camp for she did not have anyone who could take care of them while she was working but such request was once again turned down.  Accordingly, she had a substantial increase in her delays.

34. On August 2009 Mrs. Miranda once again requested the Flexi Time or a change in schedule since her two children were going to different schools but it was denied.  It is important to note that similar arrangements were granted by Mrs. Miranda's direct supervisor to other male co-workers so that they could take their children to do sports and other activities.  However, IPR would not grant the same benefits to Mrs. Miranda.

35. During the next months and until June 2010 Mrs. Miranda continued requesting a change in schedule or the Flexi Time but it was constantly denied.  Given her situation, Mrs. Miranda started to have numerous delays in her entry time which in turn affected her evaluation.

36. On June 15, 2010 co-defendant Marcelino Melendez called for a meeting where he informed Mrs. Miranda that the Human Resources Department had decided not to grant her the Flexi Time or the change in schedule requested since it was not

viable for the company and they could not see how that change in schedule would improve her tardiness and absenteeism problems.  He also told Mrs. Miranda in a threatening tone that she had to be very careful since the Human Resources Department was going to take action against her for her tardiness and absenteeism problems.

37.    With regards to Mrs. Miranda's absenteeism it is important to note that IPR knows that she has a condition called "Wolf Parkinson Disease" that causes her to have cardiac arrhythmia while in stress situations.  Therefore, most of the absences in her record are caused by stressful situations held in the work place (such as the hostile work environment held by her supervisor and the constant discrimination held against her) which caused her to have an episode of arrhythmia and the doctors at the plant sent her home.  It is imperative to note that on many occasions the doctors at the plant would send Mrs. Miranda home even though she would request to stay until the end of the day so that her evaluations would not be affected.  However, the doctors are the ones who have the final word and they would not let her go to work after such episode.

38.    It is imperative to note that there are two other male co-workers at the plant that have children with special needs who were granted special accommodations, yet such accommodations were denied time after time to Mrs. Miranda by co-defendants Melendez and Caraballo.  Such clearly discriminatory actions by IPR affected not only Mrs. Miranda's evaluations and possible increase in salary but also affected Mrs. Miranda's health.

39.    Finally, on June 16, 2010, Mrs. Miranda's supervisor gave her a written memorandum for her alleged pattern of absenteeism and tardiness in a clear effort to

affect her record to have her fired with good cause.  It must further be noted that Mrs. Miranda's male co-workers have a similar patterns of absenteeism and tardiness yet they have never been reprimanded for it.  Furthermore, Mrs. Miranda was forced to enter into a plan for corrective action where she has to have a meeting at least every two weeks with her supervisor to discuss her progress and every three months he will determine the necessity to continue with such plan while none of her male co-workers who have similar patterns of absenteeism and tardiness have been forced into similar plans.

40.    This situation has caused much tension and anxiety in Mrs. Miranda's life moreover when there are rumors all over the company that the Human Resources Department, specifically co-defendant Caraballo, and her supervisor are taking all the necessary measures to have Mrs. Miranda fired.  The hostile work environment and the discrimination towards Mrs. Miranda have also affected her personal life causing her to seek professional help with a psychologist and psychiatrist.  It was due to the psychiatrist intervention that finally on July 2010 Mrs. Miranda was granted a change in schedule where her time of entry to the plant will be at 7:30 a.m. instead of 7:00 a.m.  However, in order for her time of entry to be changed, Plaintiff would have to submit to co-defendant Caraballo a medical note confirming co-plaintiff JRM's autism condition, which she provided.  However, in a clearly pattern of hostility, animosity and discrimination against Mrs. Miranda, co-defendant Caraballo contacted Mrs. Miranda's doctor to confirm that her medical notes were real.

41.    Nevertheless, even with Mrs. Miranda's compliance with the discriminatory requirements imposed only upon her, the hostile work environment did not cease.

Moreover, the attitude towards Mrs. Miranda by her supervisor grew much hostile. He spoke to her in a humiliating tone, did not let her participate in important projects, would continuously verify only her work to find defects in it that did not exist and would continuously humiliate her in front of her co-workers telling her that she would be late since she has a child with problems.  Furthermore, her supervisor, with the knowledge and consent of the Human Resources Department, specifically with Caraballo's consent, would yell and reprimand Mrs. Miranda in a humiliating tone in front of all her co-workers for issues that were not her responsibility and even when he'd realize that the issue was not her fault her supervisor would not reprimand the responsible male co-worker.

42.   Mrs. Miranda would also constantly give ideas or suggestions in her work that would constantly be ignored by her supervisor, yet whenever a male co-worker would suggest the same he would take it into consideration.

43.   The clearest evidence of discrimination at the corporate level in IPR is the fact that the absences for maternity leave are taken into consideration to affect the semester evaluation negatively.  Such negative evaluation will in turn affect the possibility of salary increase and the Christmas bonus.  This statement was confirmed by a representative of the Human Resources Department of IPR who gave a conference on how absenteeism affects their evaluations and told the ones who were present that even a woman who is on maternity leave will have her evaluation affected. When he was confronted with the fact that such action was discriminatory against the women his response in a derogatory tone was that women had the benefit of staying home eight weeks paid.

44. During all the years that Mrs. Miranda has worked for the defendant, her performance has been of excellence, notwithstanding defendant's harassing and discriminatory actions against her. However, given IPR's position, Mrs. Miranda was left with no other alternative than to file a discrimination charge before the EEOC, against the defendant, by reason of gender, and retaliation, and immediately notified the same to the defendant.

## V. FIRST CAUSE OF ACTION:

45. The allegations contained in paragraphs 1 through 44 of this Complaint are incorporated by this reference as if fully set forth herein by Plaintiffs.

**Hostile Work Environment**

46. Defendant's conduct created a hostile working environment that affected Mrs. Miranda's terms and conditions of employment.

47. Moreover, Defendant's constant offensive behavior was sufficiently severe or pervasive to alter the conditions of Mrs. Miranda's employment and created an abusive working environment.

48. Despite Defendant's knowledge that this conduct was taking place, nothing was done to correct this unlawful behavior.

49. Instead Mrs. Caraballo would be specifically at Plaintiff's stations to verify when and if Mrs. Miranda made an error in order to try to fire her.

50. Defendant's conduct is in violation of Title VII of the Civil Rights Act of 1964 and of the Civil Rights Act of 1991, which seek to eradicate any type of discrimination on the basis of sex from the workplace.

51. Defendants' conduct also violates P.R. Act 100 of June 30, 1959, and P.R. Act 69 of July 6, 1985.

52. As a result of the aforementioned, Mrs. Miranda has suffered economic and emotional damages.

53. Defendant is doubly liable for these damages.

## VI. SECOND CAUSE OF ACTION:

**Gender Discrimination**

54. The allegations contained in paragraphs 1 through 44 of this Complaint are incorporated by this reference as if fully set forth herein by Plaintiffs.

55. Mrs. Miranda suffered gender discrimination during her term of employment with the Defendant.

56. Defendant's conduct is in violation of Title VII of the Civil Rights Act of 1964 and of the Civil Rights Act of 1991, which seek to eradicate any type of discrimination on the basis of sex from the workplace.

57. Defendant's conduct also violates P.R. Act 100 of June 30, 1959 and P.R. Act 69 of July 6, 1985, which prohibit discrimination based on gender in the workplace.

58. Defendant's conduct further violates the Equal Pay Act, 29 U.S.C. § 206(d)(1), which prohibits an employer to discriminate between employees on the basis of sex by paying wages at a rate less than the rate at which he pays wages to employees of the opposite sex for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

59. As a result of the aforementioned, Mrs. Miranda has suffered economic and emotional damages. Defendant is doubly liable for these damages.

## VII. THIRD CAUSE OF ACTION:

**Discrimination for Disability**

60. The allegations contained in paragraphs 1 through 44 of this Complaint are incorporated by this reference as if fully set forth herein by Plaintiffs.

61. Defendant unlawfully discriminated against Mrs. Miranda with respect to her terms, conditions and privileges of employment by reason of her son's disabilities.

62. As a consequence of the Defendant's unlawful employment practices and the resultant mental damages suffered by Plaintiff, she has incurred in the past and will continue to incur in the future in medical expenses. This Third Cause of Action arises under local Law No. 44 and ADA, 42 USC 12101, et als.

63. IPR unlawfully discriminated against Mrs. Miranda with respect to the compensation, terms, categories, conditions and privileges of her employment by reason of her son's disabilities.

64. On the basis of the foregoing, Plaintiff is entitled to receive a full, just and fair compensation for the aforestated mental damages which, pursuant to local law, consists in the twofold amount of the actual damages suffered by her.

**Punitive Damages**

65. Defendant's conduct demonstrated a callous disregard and deliberate indifference for Mrs. Miranda's federally protected rights.

66. Defendant knew or should have known that its conduct violated Mrs. Miranda's federally protected rights.

67. Accordingly, Defendant is liable to Mrs. Miranda for punitive damages.

## VII. FOURTH CAUSE OF ACTION:

**Torts**

68. The allegations contained in paragraphs 1 through 44 of this Complaint are incorporated by this reference as if fully set forth herein by Plaintiffs.

69. Defendant's conduct constitutes a tort under Puerto Rico Law. P.R. Civil Code Art. 1802, 31 L.P.R.A. §5141.

70. As a proximate result of the above-described wrongful acts, Mrs. Miranda has suffered emotional damages and mental anguish.

## VIII. RELIEF REQUESTED

71. Upon the facts recited above, Mrs. Miranda is entitled to the following relief:

   a. Order the defendant to make the plaintiffs whole by ordering damages for loss of income, back pay and front pay and loss of benefits in an amount not less than $500,000.00;

   b. Award the plaintiffs damages in an amount not less than $650,000.00, for each of them, for mental anguish, mental and emotional sufferings and distress.

   c. Award each of the plaintiffs compensatory damages caused as a result of the illegal acts in an amount not less than $650,000.00.

   d. Award the plaintiffs punitive damages and double damages.

   e. Award the plaintiffs the cost of their action, together with reasonable attorney's fees.

   f. Award the plaintiffs pre judgment interest.

   g. Grant the plaintiffs such other relief as this Honorable Court deems appropriate and proper.

**RESPECTFULLY SUBMITED**.

In San Juan, Puerto Rico, this 16th day of December, 2010.

**FERNANDEZ COLLINS CUYAR & PLÁ**

/s/ Myra M. Vélez-Plumey
MYRA M. VELEZ-PLUMEY
USDC No. 223812
mvp@fccplaw.com
Maximiliano Pla
USDC No. 224307
map@fccplawpr.com
PO Box 9023905
San Juan, PR 00902-3905
Tel: (787) 977-3772 / Fax: (787)977-3773